KAREN L. LOEFFLER
United States Attorney

ANDREA T. STEWARD
Assistant U.S. Attorney
KARLA PERRIN
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: Aunnie.Steward@usdoj.gov
Email: Perrin.Karla@epa.gov

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. |
| | ) | |
| | ) | |
| Plaintiff, | ) | **PLEA AGREEMENT** |
| | ) | |
| vs. | ) | |
| | ) | |
| NORTH PACIFIC SEAFOODS, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

**Unless the parties jointly inform the Court
in writing of any additional agreements,
this document in its entirety contains the
terms of the plea agreement between the
defendant and the United States. This**

agreement is limited to the District of
Alaska; it does not bind other federal, state,
or local prosecuting authorities.

# I. TERMS OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11, WAIVER OF CLAIM FOR ATTORNEY'S FEES AND COSTS, CORPORATE AUTHORIZATION

## A. Terms of Agreement

The defendant agrees to plead guilty to the one-count Information

in this case charging a violation of the Clean Water Act 33 U.S.C.

§ 1319(c)(1)(B). The United States agrees not to prosecute the

defendant further for any other offense related to the events that were

the subject of the investigation and that resulted in the charge

contained in the Information or referenced in the factual basis for this

Agreement. The parties are free to make sentencing recommendations

consistent with this agreement. Any agreements the parties have on

sentencing recommendations and guideline applications are set forth in

Section III. The defendant will waive all rights to appeal the conviction

and sentence imposed in accordance with this agreement, and will

waive all rights to collaterally attack the conviction and sentence,

except on the grounds of ineffective assistance of counsel or the voluntariness of the plea.

**B.    Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (C) will control this plea agreement. Thus, the defendant may withdraw from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

**C.    Waiver of Claim for Attorney Fees and Costs**

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

**D.    Corporate Authorization**

The defendant represents that it is authorized to enter into this Agreement and to bind itself to the terms of this Agreement. On or before the date of entry and filing of the Plea Agreement, defendant shall provide to the United States Attorney's Office and the Court resolutions signed by the board of directors authorizing the defendant corporation to enter into and comply with all the provisions of this

3

Agreement; that a representative of North Pacific Seafoods, Inc. has been authorized by North Pacific Seafoods to enter a guilty plea and be present for sentencing on behalf of North Pacific Seafoods, Inc.; and that North Pacific Seafoods and its authorized representative have observed all required corporate formalities for such authorization.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE, FORFEITURE

### A. Charges

The defendant agrees to plead guilty to a one-count Information charging a Clean Water Act violation for interference with a publicly owned treatment works, 33 U.S.C. § 1319(c)(1)(B).

### B. Elements

The elements of the charge to which the defendant is pleading guilty are as follows:

> First, the defendant introduced a pollutant or hazardous substance into a publicly owned treatment works;
>
> Second, the pollutant or hazardous substance caused the publicly owned treatment works to violate any effluent limitation or condition in any National Pollution Discharge Elimination System Permit;
>
> Third, the defendant acted negligently.

4

### C. Factual Basis

The defendant admits the truth of the allegations in the Information and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea and for the imposition of the sentence:

North Pacific Seafoods, Inc. ("NPS") is incorporated in the State of Washington. NPS owns five seafood processing facilities in Alaska, including Alaska Pacific Seafoods ("the facility") located on Kodiak Island, Alaska, where the crime charged in Count One of the Information occurred. North Pacific Seafoods, Inc. is a subsidiary of Marubeni Corporation, a Japanese corporation.

The Clean Water Act was enacted to prevent, reduce, and eliminate water pollution into waters of the United States. The Clean Water Act prohibits discharges of pollutants into waters of the United States except in compliance with a National Discharge Elimination System (NPDES) permit issued by the Environmental Protection Agency ("EPA"). The Clean Water Act also prohibits any discharge to a publicly owned treatment works ("POTW") that causes the POTW to exceed its NPDES permit or interferes with its operations.

5

The Clean Water Act prohibits the discharge of ammonia to the waters of the United States absent a permit setting permissible conditions to do so. Ammonia is toxic to aquatic life and humans. EPA issued NPDES permit AK-G52-8000--which is a general permit for all seafood processors operating shore-based facilities in Kodiak, Alaska-- on May 1, 1998. This permit was administratively extended for NPS on April 28, 2003. The permit places limits and conditions on the wastewater discharges from the NPS facility to St. Paul Harbor in Kodiak, Alaska. When NPS filled out the application for the permit the defendant indicated that it would not be discharging ammonia to the St. Paul Harbor (a Water of the United States). Again during an EPA inspection of the facility in 2008, employees indicated that ammonia was not being discharged to St. Paul Harbor by the facility.

On November 29, 2011, the facility discharged approximately 40 pounds of ammonia to the sewer. NPS's discharge of ammonia caused the POTW to exceed its NPDES limit for pH and to discharge sewage that was not fully treated to St. Paul Harbor. The discharge of ammonia from the NPS facility was first detected when employees at the Kodiak POTW smelled an odor of ammonia. A request was made to

6

the Kodiak Fire Department to help respond to determine the source of the ammonia. The Fire Department called all of the seafood processing facilities on Kodiak to ask if they were discharging ammonia. All of the facilities, including the chief engineer at the NPS facility, responded that no discharges were occurring.

The POTW employees then donned protective gear and accessed different locations on the sewer lines to trace the source of ammonia. The POTW employees were able to trace the ammonia to a manhole in the public street near the NPS facility. The chief engineer at the facility was again asked if ammonia was being discharged. This time the chief engineer admitted that the facility was discharging ammonia to the sewer and agreed to stop the discharge.

State and federal investigators subsequently determined that NPS released an ammonia solution into a sewer drain at the facility beginning on November 28, 2011, and continuing to November 29, 2011, when it was detected. The chief engineer at the facility removed the ammonia from the refrigeration system so that maintenance could be performed on the system. The ammonia was drained into a holding tank where it mixed with water. The tank then overflowed and entered

7

a drain that NPS and the engineer knew lead to the Kodiak sewer system. The ammonia discharge by NPS killed ninety-nine percent of the micro-organisms utilized in the treatment of sewage at the POTW. As a result, the POTW was unable to fully treat sewage before it was discharged to St. Paul Harbor and the POTW exceeded its permit levels for pH.

Through the investigation it was determined that the NPS facility routinely discharged ammonia from its refrigeration system directly into St. Paul Harbor both prior to and following the sewer incident. Until the sewer incident the chief engineer for the facility had never reviewed the NPDES permit for the facility. Even after the sewer incident the facility employees continued to discharge ammonia to St. Paul Harbor.

A month after the sewer incident, in December 2011, the facility employees overhauled the refrigeration compressors. During the maintenance on the compressors NPS discharged ammonia mixed with water to the St. Paul Harbor through a floor drain.

In May 2012, NPS discharged an even larger quantity of ammonia to allow for repair work on a plate freezer. On this occasion employees

8

purged a quantity of ammonia mixed with water to a large plastic tote on the roof of the facility. This tote was purposefully allowed to overflow to a rooftop drain that discharged to the alley below and into a storm drain that emptied to St. Paul Harbor. The alley where the ammonia flowed to the storm drain was a high traffic area for the public as well as employees and visitors at the facility.

The parties agree that the defendant violated the Clean Water Act when the NPS facility discharged ammonia mixed with water to the sewer and caused the POTW to exceed their permit limits as set out in Count 1 of the Information. The parties disagree as to whether the additional ammonia discharges to St. Paul Harbor were permissible under the general permit. Going forward the defendant agrees that ammonia discharges are not permissible under the current permit. NPS has cooperated fully with the United States' investigation of the matters in this agreement and has timely accepted responsibility.

//

//

//

//

9

## D. Statutory Penalties and Other Matters Affecting Sentence

### 1. Statutory Penalties

The statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea, are as follows:

Count One, 33 U.S.C. § 1319(c)(1)(B):

1) A maximum five-year term of probation;

2) a maximum $200,000 fine;

3) a $125 mandatory special assessment.

### 2. Other Matters Affecting Sentence

#### a. Conditions affecting the defendant's sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 2) the Court may order the defendant to pay restitution pursuant to 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1.

10

### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### E. Restitution

The parties agree that NPS owes $5,000 in restitution for the costs incurred by the Kodiak Island POTW to take corrective action including obtaining sludge from the U.S. Coast Guard base to recover the treatment of sewage micro-organisms.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES; GUIDELINE APPLICATION AGREEMENTS; SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty.

11

The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G. Pursuant to USSG § 8C2.1, Chapter 8 of the USSG does not apply to determine the appropriate fine in this case.

## B.   Sentencing Recommendations

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agree to jointly recommend at the time of sentencing that the Court impose the following sentence, the following are to be special conditions of probation such that a failure to comply with these conditions would constitute a violation of probation:

### 1.   Fine Amount

Based on the Information and the factual basis admitted to herein the parties agree that $150,000 is an appropriate fine amount.

### 2.   Community Service

The defendant shall make an organizational community service payment in the amount of $50,000 pursuant to § 8B1.3 of the USSG and in furtherance of satisfying the sentencing principles provided for under 18 U.S.C. § 3553(a). The parties agree that the community service payment shall be made to the City of Kodiak for the purpose of

12

hazardous materials training and response and equipment for the

POTW and the Fire Department for these purposes to include the

following:

- – An Influent pH Monitor with associated controller, wiring and computer programming for the Headworks Building at the POTW
- – Five sets of firefighting turnouts
- – Two hand line nozzles with foam capability and a portable oscillating master stream for vapor suppression
- – Twenty-four buckets of Angus 1% Aqueous Film Forming Foam
- – Five Scott 60-minute composite SCBA air bottles
- – One Zoll Auto Pulse chest Compression device

### 3.   Environmental Compliance Plan

NPS will submit an Environment Compliance Plan in accordance

with Section 8B2.1 of the United States Sentencing Guidelines at the

time of sentencing that has been pre-approved and agreed to by the

United States and applies to all five of NPS' facilities in Alaska.

### 4.   Term of Probation

NPS will be placed on probation for three years. In addition to the

standard conditions of probation, NPS agrees to implement a program

whereby all NPS employees involved in the handling of hazardous

materials, including anhydrous ammonia, will receive job-specific

environmental compliance training. This program will ensure that each

13

affected NPS employee will have working knowledge of applicable environmental requirements and how those requirements apply to the employee's job responsibilities.

## IV. WAIVER OF TRIAL, APPELLATE RIGHTS, AND COLLATERAL ATTACK RIGHTS

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

14

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial -- the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;
- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;
- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf;
- The right to contest the validity of any searches conducted on the defendant's property or person.

## B.    Appellate Rights

The defendant waives the right to appeal the conviction resulting from the entry of guilty plea to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in section II D above in this agreement, the defendant waives without

15

exception the right to appeal on all grounds contained in 18 U.S.C. §
3742 the sentence the Court imposes, or terms or conditions of
probation, and any fines or restitution.

## C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the
resulting conviction and/or sentence or terms or conditions of probation,
and any fines or restitution the Court imposes.  The only exceptions to
this collateral attack waiver are as follows:  1) any challenge to the
conviction or sentence alleging ineffective assistance of counsel -- based
on information not now known to the defendant and which, in the
exercise of reasonable diligence, could not be known by the defendant at
the time the Court imposes sentence; and 2) a challenge to the
voluntariness of the defendant's guilty plea.

## V.    ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea and the Court's
acceptance of the defendant's plea and the terms of this agreement, the
United States agrees that it will not prosecute the defendant further for
any other offense -- now known -- arising out of the subject of the
investigation related to the charges brought in the indictment in this

16

case and the defendant's admissions set forth in Section II C. Provided, however, if the defendant's guilty plea is rejected, withdrawn, vacated, reversed, or set aside, or if the defendant's conviction or sentence is vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements.

## VI. ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(7) and (8), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, the authorized representative for NORTH PACIFIC SEAFOODS, INC., the defendant, affirm this document contains all of the agreements made between NPS – with the assistance of counsel –

17

and the United States regarding this plea. There are no other promises, assurances, or agreements the United States has made or entered into with NPS that have affected the decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, I and the United States will jointly inform the Court in writing before I enter the guilty plea on behalf of NPS.

NPS understands that no one, including counsel for NPS, can guarantee the outcome of this case or what sentence the Court may impose if NPS pleads guilty. If anyone, including the NPS attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter the plea. If there were, I would so inform the Court.

NPS enters into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on NPS's part to fulfill these obligations will constitute a material breach of this agreement. If NPS breaches this agreement, NPS agrees that the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against NPS on any charges arising out of the investigation

18

in this matter. If NPS's compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which NPS agrees any of NPS's disclosures will be admissible, the Court will determine whether or not NPS has violated the terms of this agreement. NPS understands the government's burden to prove a breach will be by a preponderance of the evidence.

I understand that the Court will ask me under an oath to answer questions about the offense to which NPS is pleading guilty and NPS' understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

On behalf of NPS I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement on behalf of NPS or to enter a plea on behalf of NPS. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with the attorney for NPS is privileged and confidential, and cannot be revealed without NPS's permission. Knowing this, I agree that this document will be filed with the Court.

19

NPS is fully satisfied with the representation given NPS by the attorneys for NPS and I am prepared to repeat this statement at the time I stand before the Court and enter NPS' guilty plea. The NPS attorneys and NPS have discussed all possible defenses to the charges to which NPS is pleading guilty. NPS' attorney has investigated NPS' case and followed up on any information and issues NPS has raised to NPS' satisfaction. The NPS attorneys have taken the time to fully explain the legal and factual issues involved in this case to the satisfaction of NPS. The attorneys and NPS have discussed the statutes applicable to NPS's offense and sentence as well as the possible effect the U.S.S.G. may have on NPS's sentence.

Based on NPS' complete understanding of this plea agreement, NPS therefore wishes to enter a plea of guilty to Count One of the Information.

DATED: 1/21/14          _____
                            NORTH PACIFIC SEAFOODS INC.
                            Authorized Representative of
                            Defendant

As counsel for the defendant, I have discussed all plea offers and the terms of this plea agreement with the defendant, have fully explained the charge to which the defendant is pleading guilty and the

20

necessary elements, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competency to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: Jan. 27, 2014

DAVID TAYLOR
Attorney for North Pacific
Seafoods, Inc.

DATED: 27 January 2014

JOHN IANI
Attorney for North Pacific
Seafoods, Inc.

On behalf of the United States, the following accept the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: 1/30/14

s/ Andrea T. Steward
ANDREA T. STEWARD
Assistant U.S. Attorney

DATED: 1/30/14

s/ Karen L. Loeffler
KAREN L. LOEFFLER
United States Attorney

21

DATED: 1/31/14

for KARLA PERRIN
Special Assistant U.S. Attorney

22